**Brian J. KELLEY, et al., Appellants,**

v.

**MED–1 SOLUTIONS, LLC, et al., Appellees.**

**No. 49A04–1008–PL–517.**

Court of Appeals of Indiana.

Aug. 2, 2011.

Robert E. Stochel, Hoffman & Stochel, Crown Point, IN, Attorney for Appellants.

Peter A. Velde, John B. Drummy, Nicholas W. Levi, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Brian J. Kelley, Denise D. Boyd, Yvonne S. Emous, Bertie M. Housley, and Bruce E. Kennedy (collectively, the "Debtors") appeal the trial court's entry of summary judgment in favor of Med–1 Solutions, LLC, William J. Huff, Francis Niper, Courtney Gaber, and Richard Huston (collectively, "Med–1").

We affirm.

### ISSUES

The Debtors raise the following issue:

Whether the trial court properly granted Med–1's motion for summary judgment and denied the Debtors' motion for summary judgment.

Med–1 raises the following issue:

Whether Med–1 is entitled to an award of appellate attorney fees.

### FACTS

#### 1. Med–1

Med–1 is a collection agency licensed in Indiana. Indiana Code section 25–11–1–1 defines a "collection agency" as "any individual, firm, partnership, limited liability company, or corporation" that "engag[es] directly or indirectly and as a primary or secondary object, business, or pursuit, in soliciting claims for collection, or in the collection of claims owed or due or asserted to be owed or due to another...." Ind.Code § 25–11–1–1(a), (b). "Collection agency" also includes "any person who sells, furnishes, or maintains a letter or written demand services ... designed for the purpose of making demand on any debtor on behalf of any creditor for the payment of any claim...." *Id.*

Huff is the owner of Med–1, which employs Niper, Gaber, and Huston as in-house counsel. Med–1 collects delinquent debts on behalf of medical providers, including St. Vincent Carmel Hospital, Inc. ("St. Vincent") and Rush Memorial Hospital ("Rush Memorial"). In addition to collecting on delinquent accounts on behalf of its clients, Med–1, as a letter vendor, also produces and mails debt collection letters on behalf of, and in the name of, its clients.

At some point, Med–1 and St. Vincent entered into a contract, whereby they agreed, in part, to the following:

*Agency Obligations.* [Med–1] agrees that its collection practices shall be in compliance with all applicable state and federal laws. Pursuant to its collection practices, [Med–1] may initiate legal action against [St. Vincent's] non-FAP accounts.[1] Legal action may include law-

---

1. The record does not disclose the definition of a "non-FAP" account.

suit, judgment, interest applied to the balance through, as allowed by Indiana law, property or estate liens, and garnishment of wages.

. . . .

*Collection Agency Services.* Collection agency services shall include all legal means with which to collect a debt, including listing the debt against the debtor's credit. [Med–1] will pay any attorney fees and/or court costs incurred in collection of the debt. These costs will be paid by [Med–1] and recovered from any payments prior to any reimbursement to client.

(Debtors' App. 150–51). Med–1 and Rush Memorial entered into a contract, whereby they agreed, in part, to the following: "Med–1 agrees to attempt to collect balances from patients using all available legal means, including, but not limited to, sending legal letters, calling patients, filing suit, and garnishing wages." (Debtors' App. 154).

### 2. The Debtors

#### a. Kennedy

On January 8, 2004, Kennedy signed an "Assignment of Benefits Authorization," agreeing to pay Rush Memorial "for all charges not paid by assigned insurance." (Debtors' App. 67). In the event Rush Memorial assigned his account to a collection agency, Kennedy also agreed to "be responsible for the total of the unpaid balance" and "any court costs or reasonable attorney fees . . . ." (Debtors' App. 67).

Subsequently, Rush Memorial referred four of Kennedy's accounts to Med–1 for collection. Accordingly, Med–1 mailed correspondence to Kennedy on January 21, 2004, February 19, 2004, March 22, 2004, and April 16, 2004, wherein it identified itself as a collection agency, collecting debt on behalf of Rush Memorial. Counsel for Med–1 signed the collection notices.

On February 17, 2006, Med–1 filed a notice of claim against Kennedy in the Rush Superior Court, Small Claims Division. Med–1 sought judgment in the amount of $3,778.80, which included attorney fees in the amount of $350.00. On or about March 20, 2006, Med–1 and Kennedy entered into a pre-trial settlement, whereby Kennedy agreed to pay Med–1 $3,848.80. The trial court approved the settlement agreement on March 27, 2006. Kennedy subsequently acknowledged that he knew that Med–1's requests for payment were on behalf of Rush Memorial.

#### b. Housley

On November 23, 2004, Housley signed a form, acknowledging her financial responsibility for all charges incurred due to medical services provided by St. Vincent. This form read, in part, as follows: "If your account is forwarded to a collection agency or attorney . . . you are responsible for any court costs or reasonable attorney fees incurred in the collection of your account." (Debtors' App. 63). Housley incurred charges under three separate accounts.

Between May 2, 2005, and July 15, 2005, Med–1, on behalf of St. Vincent and in St. Vincent's name, sent Housley a "Pre–Collection Agency Review Notice," for each account, notifying her that her "account has been referred to the St. Vincent Collection Department."[2] (Med–1's App. 16). Thereafter, on behalf of St. Vincent and in St. Vincent's name, Med–1 sent Housley three "Collection Agency Referral Notifications," one for each account, notifying her that her "account is now in the process of being referred to a Collection Agency"

---

**2.** Each "Pre–Collection Agency Review Notice" contained this standard language.

for "further collection effort."[3] (Med–1's App. 17).

After St. Vincent referred the three accounts to Med–1 for collection, Med–1 mailed Housley correspondence, identifying itself as a debt collector representing St. Vincent in its attempt to collect a debt from Housley. Counsel for Med–1 signed the correspondence.

On August 15, 2006, Med–1 filed a notice of claim against Housley in the Hamilton Superior Court, Small Claims Division. Med–1 sought judgment in the amount of $2,336.45, which included attorney fees in the amount of $375.00. The notice included a copy of the Acknowledgment of Financial Responsibility form signed by Housley as well as an account summary of her accounts with St. Vincent. On November 1, 2006, the trial court entered a default judgment against Housley in the amount of $2,336.45, plus court costs. Housley never denied owing the debt to St. Vincent and later admitted during a hearing that she "knew that Med–1 was trying to collect the bill for St. Vincent." (Med–1's App. 219).

#### c. *Emous*

On March 18, 2005, prior to receiving treatment at St. Vincent, Yvonne Emous signed a standard form, titled "Acknowledgment of Financial Responsibility," which provided as follows:

By signing this form you agree to abide by all the terms contained herein. You also agree to pay [St. Vincent] all the charges promptly when due. . . . If your hospital account . . . is forwarded to a collection agency or attorney: (1) whether or not legal proceedings are instituted, a collection agency fee not to exceed 20% of the account balance or One Thousand Dollars ($1000), may be

added to your account balance forwarded; and (2) *you will be responsible for any court costs, reasonable attorney fees,* and interest as allowed by Indiana statute, incurred in the collection of your account.

(Med–1's App. 27) (Emphasis added).

On November 22, 2005, St. Vincent sent Emous a request for payment in the amount of $7,966.62, due December 6, 2005. On December 26, 2005, St. Vincent sent Emous a final notice that her account was past due and had incurred a late fee of $20.00. St. Vincent informed Emous that failure to pay her account in full by January 9, 2006, would result in "placement of [her] account with a collection agency." (Med–1's App. 69).

In St. Vincent's name and on behalf of St. Vincent, Med–1 sent Emous a Pre–Collection Agency Review Notice and a Collection Agency Referral Notification on June 20, 2005, and July 5, 2005, respectively. On July 27, 2005, Med–1 sent Emous notice that, as a debt collector representing St. Vincent, it was attempting to collect a debt from Emous. Counsel for Med–1 signed the correspondence.

On August 15, 2006, Med–1 filed a notice of claim against Emous in the Hamilton Superior Court, Small Claims Division. Med–1 sought judgment in the amount of $3,573.50, which included attorney fees in the amount of $375.00. The notice included a copy of the Acknowledgment of Financial Responsibility form signed by Emous as well as an account summary of Emous' accounts with St. Vincent. On September 6, 2006, the trial court entered a default judgment against Emous in the amount of $3,573.50, plus court costs.

#### d. *Kelley*

On October 23, 2005, Kelley received medical treatment at St. Vincent. Prior to

---

**3.** Each "Collection Agency Referral Notifica- tion" contained this standard language.

receiving treatment, he signed an Acknowledgment of Financial Responsibility.

On January 30, 2006, St. Vincent sent Kelley a request for payment in the amount of $537.09, due February 13, 2006. On March 3, 2006, St. Vincent sent Kelley a final notice that his account was past due and had incurred a late fee of $20.00. St. Vincent informed Kelley that failure to pay his account in full by March 17, 2006, would result in "placement of [his] account with a collection agency." (Med–1's App. 29).

On March 22, 2006, Med–1, on behalf of St. Vincent and in St. Vincent's name, sent Kelley a Pre–Collection Agency Review Notice. On April 10, 2006, Med–1, again on behalf of St. Vincent and in St. Vincent's name, sent Kelley a Collection Agency Referral Notification. On May 2, 2006, Med–1 sent a letter to Kelley, identifying itself as a debt collector representing St. Vincent in its attempt to collect a debt from Kelley. Counsel for Med–1 signed the letter.

On October 31, 2006, Med–1 filed a notice of claim against Kelley in the Hamilton Superior Court, Small Claims Division, seeking $432.09 for his "[u]npaid [m]edical [b]ill" and $375.00 in attorney fees "per contract...." (Debtors' App. 43). The notice included a copy of the Acknowledgment of Financial Responsibility form signed by Kelley as well as an account summary of Kelley's St. Vincent account. On January 19, 2007, Med–1 and Kelley entered into an agreed judgment in the amount of $892.09.

#### e. *Boyd*

On January 28, 2006, Boyd signed an Acknowledgment of Financial Responsibility prior to receiving treatment at St. Vincent. Boyd, either as the patient or responsible party, subsequently incurred medical bills under three separate account numbers. Between February 13, 2006, and April 10, 2006, Med–1, on behalf of St. Vincent and in St. Vincent's name, sent Boyd a Pre–Collection Agency Review Notice for each account. Thereafter, Med–1 sent Boyd three Collection Agency Referral Notifications, one for each account. Med–1 sent these in St. Vincent's name and on behalf of St. Vincent. After St. Vincent referred Boyd's accounts to Med–1 for collection, Med–1 mailed Boyd correspondence on March 25, 2006, April 4, 2006, and June 13, 2006, in which it identified itself as a debt collector representing St. Vincent in its attempt to collect a debt from Boyd. Counsel for Med–1 signed the correspondence.

On October 31, 2006, Med–1 filed a notice of claim against Boyd in the Hamilton Superior Court, Small Claims Division. The notice included an account summary for each of Boyd's past due St. Vincent accounts. On January 25, 2007, the trial court entered a default judgment against Boyd in the amount of $365.00, plus court costs. The default judgment included attorney fees in the amount of $150.00. Boyd acknowledged that she knew Med–1 was attempting to collect a debt on behalf of St. Vincent.

#### 3. *Federal Court Action Against Med–1*

At some point in 2006, counsel for the Debtors in this matter filed a complaint on behalf of complainant William Beeson against Med–1 in the United States District Court, Southern District of Indiana after Beeson and Med–1 had settled Med–1's small claims dispute against Beeson for an unpaid hospital bill. In the district-court action, Beeson alleged that "Med–1's knowing failure to name the real owner of the debt, St. Vincent, as plaintiff in its small claims complaint was a false and misleading act under the [Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–

1692*o* (the 'FDCPA') ]"; "Med–1 violated the FDCPA and Indiana law by claiming interest on the debt it collected for St. Vincent"; and "the totality of Med–1's conduct in the collection of Beeson's debt was deceptive, misleading, and unfair, all in violation of the FDCPA." *Beeson v. Med–1 Solutions, LLC,* No. 1:06–CV–1694–SEB–JMS, 2008 WL 4443224, at \*2 (S.D.Ind. Sept. 25, 2008). Subsequently, the parties filed cross-motions for summary judgment.

### 4. State Court Action

On May 7, 2008, while the federal action was pending, the Debtors herein filed an amended complaint for damages and injunctive relief against Med–1 in Marion Superior Court. The Debtors asserted that Med–1 violated the FDCPA by collecting attorney fees to which it was not entitled and sharing the attorney fees with its employees. The Debtors also sought relief from judgment, asserting that Med–1 "was never a bona fide purchaser for value of the accounts being sued upon," and "there was no statutory or contractual basis for the courts to award Med–1 judgments that included attorney fees and/or costs." (Debtors' App. 32). In addition, the Debtors asserted constructive fraud, purporting that Med–1 "failed to disclose to the Small Claims Courts the fact that Med–1 did not own the accounts upon which it sued the consumer-debtors"; "misrepresented . . . the true value of their 'reasonable attorney fees'"; and never disclosed "the existence of their attorney fee-sharing agreement." (Debtors' App. 33–34). The Debtors sought certification as a class to proceed on behalf of all other similarly situated debtors. The Debtors also sought injunctive relief, which the trial court denied following a hearing.

On July 7, 2009, Med–1 filed a motion for summary judgment, designated evidence, and memorandum in support of its motion for summary judgment. In support of its argument that Med–1 was entitled to summary judgment as to the Debtors' claim of misrepresentation, Med–1, *inter alia,* cited to the district court's holding in *Beeson.*

As to Med–1's alleged false representation, the *Beeson*-court found that Med–1 "made no 'literally false statement' or any false representation at all" as it had "attached to and thus incorporated in the complaint a bill clearly indicating that St. Vincent owned the debt" and that Med–1's correspondence to Beeson had informed him "that his debt was being referred, and not sold, to Med–1." *Beeson,* 2008 WL 4443224, at \*4. As to the alleged demand of interest on Beeson's debt, the district court found no violation of the FDCPA. Regarding the totality of Med–1's actions, the district court found as follows:

> Beeson was informed repeatedly through the correspondence from both St. Vincent and Med–1 that Med–1 was acting as a debt collector for St. Vincent, and thus as [St. Vincent]'s agent, and not as the owner of the debt, and that Med–1's involvement was on a "referral" basis and not as a result of St. Vincent having sold the debt to Med–1. Given the frequency and clarity of these assertions in the correspondence, an unsophisticated debtor would not have been confused by Med–1's practices. Nothing in the facts indicated that Med–1 had any intention to mislead Beeson. Med–1 made every effort to identify itself as a debt collector and not the owner of the debt. Hiring lawyers and filing a claim against Beeson were simply part of the agreement Med–1 made with St. Vincent to undertake its debt collection responsibilities. Med–1 assured Beeson that it "represented" St. Vincent in the suit and that the suit was for an "Account Balance for St. Vincent." Viewing this situ-

ation as a whole, a debtor with rudimentary knowledge of the financial world and reasonable intelligence would not have been confused or misled. The totality of Med–1's actions simply does not rise to the level of a violation of the FDCPA.

*Beeson,* 2008 WL 4443224, at *6 (footnote omitted). The district court also determined that the FDCPA did not require Med–1, in its small claims notices, to clarify that it was filing suit as an agent of St. Vincent. *Beeson,* 2008 WL 4443224, at *6 n. 8. Finding no genuine issue of material fact and that the facts clearly established that Med–1 did not violate the FDCPA or Indiana law, the district court granted summary judgment in favor of Med–1 in an opinion handed down in September of 2008. Accordingly, the district court also decertified the previously certified plaintiff class. Beeson did not appeal.

On August 26, 2009, the Debtors filed a motion for partial summary judgment and opposition to Med–1's motion for summary judgment. The trial court held a hearing on the parties' motions on October 30, 2009. On June 9, 2010, the trial court entered its order, finding, in pertinent part, as follows:

22. Plaintiffs' claims in this lawsuit are barred by res judicata and collateral estoppel. An Indiana state court has already determined that each of the plaintiffs owed attorney fees as part of the delinquent debt pursuant to their contracts with various hospitals. Their complaint asks this court to review and reject those prior judgments, and thus, the plaintiffs' claims are barred by the preclusion doctrines of collateral estoppel and res judicata.

23. Plaintiffs request that this Court set aside various small claim judgments for [f]raud upon the Courts fails. Plaintiffs have made absolutely no showing of any false or fraudulent statement by Med–1 or its attorneys that would justify setting aside the small claims judgments. Plaintiffs['] assertion that because Med–1 captions its lawsuits as "Med–1 Solutions, LLC" and not in the name of the hospital, Med–1 deceived the parties and the court by suggesting that Med–1 had purchased the debt from the hospital, as opposed to acting as the hospital's collection agent, is not supported in light of the attachments to each lawsuit clearly demonstrating that accounts were referred to Med–1, stating the name of the hospital that referred those accounts and providing all of the relevant account information for each debt. Further, the uncontroverted affidavit of ... Niper establishes that the plaintiffs and the small claims court were notified of the relationship between Med–1 and its hospital clients and establishes that there was no misstatement to any court or party. The Court will not set aside the judgments, nor could it.

24. The Court further notes that Plaintiffs' argument is nothing more than a Real Party in Interest argument.... Trial Rule 17 provides that any objections on the basis that the plaintiff is not the proper party in interest must be made prior to the entry of judgment. Even if the plaintiffs' argument had merit—which it does not—they have long waived the suggestion that Med–1 was not the proper party to bring suit.

25. Plaintiffs' real party in interest argument fails because Indiana collection law clearly permits agents to sue on behalf of principals and to collect all sums owed to the principal, including attorney's fees if permitted by the contract establishing the debt. ... There was nothing improper about the collection procedure employed by Med–1.

26. A federal district judge reached the same conclusion in a nearly identical case brought against Med–1 by the same counsel that represent the plaintiffs in this action. There the Court entered summary judgment in favor of Med–1, finding that there was nothing improper about filing a collection action with Med–1 as the captioned plaintiff. The plaintiffs have never tried to distinguish this decision or to suggest that it is not controlling. Rather, they have simply argued that the federal district court was wrong.

27. Plaintiffs' FDCPA claims are further barred as each plaintiff testified that he or she understood that Med–1 was suing for a delinquent hospital bill. An FDCPA claim requires that a statement actually confuse a debtor, and where a debtor is not confused, there is no actionable claim.... Even if the statement in Med–1's small claims notice was false—which it was not—it would not be actionable as no plaintiff was ever actually confused. This same decision on plaintiffs' FDCPA claim was reached in *Beeson v. Med–1 Solutions, LLC.*

28. The claim for constructive fraud is clearly barred, and the plaintiffs have not even offered an argument in support of the count. Constructive fraud requires the existence of a confidential or fiduciary relationship, and the undisputed facts clearly demonstrate that there is no such relationship between the plaintiffs and the defendants.

29. The claim for money had and received likewise fails. The plaintiffs must show both that the money properly belongs to them and that the money was received through a promise or contract involving mistake of facts, lack of consideration or failure of consideration. The undisputed facts negate both elements, and again, plaintiffs have not advanced an argument in support of this count.

*See* Order attached to Debtors' Br. (internal citations omitted).[4] Accordingly, the trial court entered summary judgment in favor of Med–1 and against the Debtors. As such, the trial court denied all other pending motions, including the Debtors' motion for class certification, as moot.

### DECISION

The Debtors assert that the trial court erred in granting summary judgment in favor of Med–1. Specifically, they argue that 1) Med–1's filing of small claims notices "in its own name on accounts that it did not own" and "demand[ing] and collect[ing]" attorney fees from the Debtors violated the FDCPA; 2) their claims are not barred by res judicata or collateral estoppel; and 3) Med–1 committed fraud in suing on accounts that it did not own. Debtors' Br. at 4.

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury,* 671 N.E.2d 113, 116 (Ind.1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 169 (Ind.1996). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or

---

**4.** The copy of the Order included in Debtors' Appendix is missing several pages. We there- fore refer to the copy included in the Debtors' brief.

where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App.1991). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind.1996). However, once the movant has carried its initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 138 (Ind.Ct.App. 1993). If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id.*

■ "The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Indiana Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000).

### 1. *Purported Violations of the FDCPA*

The Debtors argue that Med–1 violated section 1692e of the FDCPA when it filed the notices of small claims in its own name and sought attorney fees. We disagree.

One of the purposes of the FDCPA is "to eliminate abusive debt collection practices by debt collectors...." 15 U.S.C. § 1692(e). Thus, the FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It is a violation of section 1692e to falsely represent "the character, amount, or legal status of any debt" or falsely represent "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(A), (B). Also, section 1692f(1) prohibits the "collection of any amount (including any ... fee ... ) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### a. *Suing in Med–1's name*

■ The Debtors make a convoluted argument that Med–1 violated the FDCPA by suing the Debtors "in its own name on accounts that it did not own," thereby misleading the Debtors. Debtors' Br. at 6. The Debtors, however, do not dispute the validity of the debts owed by them or Med–1's authority to collect the debts on behalf of its clients.

■ "Practices purported to violate the [FDCPA] must be viewed from the objective standard of 'unsophisticated debtor.'" *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir.2000). The "unsophisticated debtor" is one who possesses "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Id.* According to this standard, objectively, a statement would not be considered confusing or misleading "unless a significant fraction of the population would be similarly misled." *Id.*

In filing its claims, Med–1 did not purport or represent that it owned the debts owed by the Debtors. Rather, the exhibits attached to the small claims complaints filed in Hamilton Superior Court clearly identified that Med–1's claims were based on debts owed on St. Vincent's accounts, which were referred to Med–1 for collec-

tion. The notice of small claim filed in Rush Superior Court clearly identified that Med–1 based the claim upon an "[u]npaid Rush Memorial Hospital Bill[.]" (Debtors' App. 66).

Furthermore, prior correspondence from Med–1 clearly identified Med–1 as a collection agent of the respective medical providers, representing said medical providers. As a matter of undisputed fact, all of the correspondence from Med–1 plainly identified Med–1 as a collection agency or debt collector, collecting accounts on behalf of its named clients. We therefore cannot say that Med–1 made false, deceptive or misleading representations as to its status.

As to the Debtors' speculation regarding what they or other "unsophisticated consumers" are expected to know, see Debtors' Br. at 11–12, they have failed to present sufficient evidence to create a genuine factual issue for trial. See Pettit, 211 F.3d at 1061–62 (finding no genuine issue for trial where the debtor "merely speculate[d] about how a naive debtor would interpret [a] letter" from a collection agency). We therefore find no error in granting summary judgment in favor of Med–1 on this issue.

### b. Attorney fees

█ The Debtors maintain that Med–1 violated the FDCPA by collecting attorney fees to which it was not entitled. They argue that "[s]ince there is no written agreement between Med–1 and the [Debtors] for the payment of attorney fees, [Med–1] violate[d] § 1692f [of the FDCPA] when it . . . collect[ed] attorney fees from the [Debtors]." [5] Debtors' Br. at 13.

Again, section 1692f(l) of the FDCPA prohibits the "collection of any amount

(including any . . . fee . . . ) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." The designated evidence shows, and the Debtors do not dispute, that each of the Debtors had entered into an agreement with their medical providers, whereby they acknowledged that their accounts may be forwarded to a collection agency, in the event of which they agreed to be responsible for "reasonable attorney fees," incurred in the collection of their accounts. (See, e.g., Debtors' App. 56, 63, and 67).

The agreements between Med–1 and its clients created an agency relationship by which Med–1 could pursue claims, including those for attorney fees, against the Debtors. See Mut. Hosp. Serv., Inc. v. Burton, 695 N.E.2d 641, 644 (Ind.Ct.App. 1998) (finding that where the creditor has granted express authority to its agent, the collection agency, to collect accounts, the collection agency may file claims to do so). Accordingly, we cannot say that, as a matter of law, the trial court erred in granting Med–1 summary judgment. See Spears v. Brennan, 745 N.E.2d 862, 872 (Ind.Ct. App.2001) (stating that an attorney hired by a creditor is not prohibited as a matter of law from seeking attorney fees and merely requesting attorney fees in a debt collection claim against a debtor does not violate the FDCPA).

### 2. Res Judicata

█ The Debtors maintain that their claims are not barred by res judicata or collateral estoppel.

The doctrine of res judicata serves to prevent the litigation of matters that have already been litigated. Res judicata consists of two distinct components: claim preclusion and issue preclusion.

---

**5.** We note that the Debtors do not dispute that they owe attorney fees pursuant to the agreements entered into with the medical service providers.

Claim preclusion is applicable when a final judgment on the merits has been rendered and acts to bar a subsequent action on the same claim between the same parties. When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies. "Final judgments dispose of the subject matter of the litigation as to the parties so far as the court in which the action is pending has the power to dispose of it."

*TacCo Falcon Point, Inc. v. Atl. Ltd. P'ship XII*, 937 N.E.2d 1212, 1218–19 (Ind. Ct.App.2010) (internal citations omitted). "A default judgment is a judgment on the merits for the purposes of res judicata." *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 374 (Ind.Ct.App.2001).

Citing to Indiana Small Claims Rule 11(F), the Debtors argue that the doctrine of res judicata does not apply because they are not disputing the amounts of the judgments entered against them, only the manner in which Med–1 obtained the judgments. Namely, the Debtors challenge Med–1's collection of accounts it did not own and demand for attorney fees "from consumer debtors even though it had no contractual right to make such demand." Debtors' Br. at 14.

Small Claims Rule 11(F) provides: "A judgment shall be res judicata only as to

the amount involved in the particular action and shall not be considered an adjudication of any fact at issue in any other action or court."

The rule, however, does not allow a party to relitigate a claim upon which judgment has been entered in a small claims case. Instead, S.C.R. 11(F) was intended primarily to "limit issue preclusion where some fact in the small claim action is at issue in another case," and to "also apply to claim preclusion to the extent that claim preclusion would ordinarily bar all matters which might have been litigated but were not actually litigated in the small claims action."

*In re Ault*, 728 N.E.2d 869, 872 (Ind.2000) (internal citation omitted).

As noted, the Debtors do not dispute that they owe on their accounts or that they owe attorney fees; in fact, the Debtors do not seek to have the judgments entered against them set aside.[6] *See* Debtors' Br. at 16. Rather, they seek an award solely based upon a statutory cause of action: the alleged violation of the FDCPA. *See* 15 U.S.C. § 1692k(a) (providing that "in the case of any action by an individual" against a debt collector for a violation of the FDCPA, the debt collector "is liable to such person in an amount equal to the sum of ... such additional damages as the court may allow, but not exceeding $1,000," plus additional amounts allowed "in the case of a class action").

Regarding actions for violations of the FDCPA, this court has held that a plaintiff who brings a claim based on the manner in which a defendant brought an action in small claims court may bring such claim in an "independent action" and is not barred by res judicata. *See Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1028 (Ind.Ct.

---

6. An action under the FDCPA attacking the awards would not be the proper remedy and would be "tantamount to a collateral attack on that award." *Spears*, 745 N.E.2d at 872.

App.2005) (finding that the doctrine of res judicata did not bar the plaintiff from asserting an independent action for, *inter alia*, violation of the FDCPA as the action was not an attempt to undermine the validity of the judgment). Moreover, even where the plaintiff could have raised claims as counterclaims in the small claims action, the plaintiff is not precluded from asserting the claims in a separate, independent action. *See id.*; *see also Spears*, 745 N.E.2d at 877 (holding that the plaintiff "was not required to invoke his rights under the FDCPA during the course of the debt collection claim or risk waiving those rights altogether" as "[a]n FDCPA claim 'has nothing to do with whether the underlying debt is valid,'" but instead "'concerns the method of collecting the debt. It does not arise out of the transaction creating the debt[.]'" (quoting *Azar v. Hayter*, 874 F.Supp. 1314, 1318 (N.D.Fla.1995))).

Nevertheless, even if the Debtors' FDCPA claims are not barred by res judicata, we cannot say that the trial court erred in granting summary judgment in favor of Med–1 and against the Debtors. As discussed above, the manner in which Med–1 filed the small claims complaints against the Debtors did not violate the FDCPA.

## 3. *Fraud*

 The Debtors also assert that the trial court improperly entered summary judgment in favor of Med–1 on their independent action for relief from judgment for fraud on the court due to Med–1's alleged failure to "disclose[ ] to the Small Claims Court the fact that Med–1 did not own the accounts, or that Med–1 did not have an independent agreement with the [D]ebtors for the payment or collection of attorney fees." Debtors' Br. at 17. We disagree.

Trial Rule 60(B) provides, in pertinent part, as follows:

> On motion and upon such terms as are just the court may relieve a party from an entry of default, final order, or final judgment . . . for the following reasons:
>
> . . . .
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

Trial Rule 60(B) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment . . . for fraud upon the court." Further, independent actions are not limited to the one-year filing requirement under Trial Rule 60(B)(3). *See Stonger v. Sorrell*, 776 N.E.2d 353, 356 (Ind.2002).

 In order to prevail on a claim of fraud on the court, a party "must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense." *Id.* at 357. "Fraud on the court has been narrowly applied and is limited to the most egregious of circumstances involving the courts." *Id.*

 The party seeking to have a judgment set aside carries the burden of proving fraud on the trial court. *See id.* at 358. "To prove fraud on the court, it is not enough to show a possibility that the trial court was misled." *Id.* "Rather, there must be a showing that the trial court's decision was actually influenced." *Id.*

Here, the Debtors presented no evidence that the manner in which Med–1 filed claims against the Debtors influenced or misled the small claims courts. Moreover, the Debtors presented no evidence that Med–1 engaged in any action that prevented the Debtors from fully and fair-

ly presenting defenses or contesting the claims. Given that the Debtors failed to present, or even allege, sufficient facts to support a claim of fraud on the courts, we cannot say that the trial court erred in granting summary judgment in favor of Med–1 on this issue.

### 4. *Appellate Attorney Fees*

 Finally, Med–1 requests appellate attorney fees pursuant to Rule 66(E) of the Indiana Rules of Appellate Procedure, which states that this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees."

> Our discretion to award attorney fees under Appellate Rule 66(E) is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. Moreover, while we have discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious.

*Poulard v. Laporte County Election Bd.,* 922 N.E.2d 734, 737–38 (Ind.Ct.App.2010) (internal citations omitted).

 Bad faith on appeal may be "substantive" or "procedural." *Id.* at 738. Med–1 accuses the Debtors of both.

Procedural bad faith consists of the flagrant disregard for the form and content requirements of our rules; the omission and misstatement of relevant facts appearing in the record; and the filing of "briefs appearing to have been written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court." *Harness v. Schmitt,* 924 N.E.2d 162, 168 (Ind.Ct. App.2010). While the Debtors failed to comply fully with our appellate rules and may have omitted relevant facts, we cannot say that their acts are so flagrant or significant as to warrant the imposition of attorney fees.

As to the substantive bad faith claim, Med–1 must show "that the appellant's contentions and argument are utterly devoid of all plausibility." *Id.* "Substantive bad faith 'implies the conscious doing of wrong because of dishonest purpose or moral obliquity.'" *Id.* (quoting *Wallace v. Rosen,* 765 N.E.2d 192, 201 (Ind.Ct.App. 2002)). Although the Debtors' arguments on appeal fail, we cannot say that their arguments are "utterly devoid of all plausibility." *Poulard,* 922 N.E.2d at 738. We therefore deny Med–1's request for attorney fees.[7]

In conclusion, we find that the trial court properly granted Med–1's motion for summary judgment and denied the Debtors' motion for partial summary judgment; and we decline to award Med–1 appellate attorney fees.[8]

Affirmed.

RILEY, J., and BARNES, J., concur.

---

**7.** As the Debtors' cause of action is well-settled by existing case law, we advise counsel for the Debtors that any future claims similar to those found here likely will result in a finding of substantive bad faith.

**8.** Given our holding, we decline to address the Debtors' assertion that the trial court

erred in refusing to grant their motion for class certification.