FILED

Sep 14 2016, 8:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

David J. Karnes
Michael G. Foley
Dennis, Wenger & Abrell P.C.
Muncie, Indiana

ATTORNEY FOR APPELLEE

Gregory K. Blanford
The Blanford Law Office
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Meridian Health Services Corporation, *Appellant-Intervenor,* <br><br> v. <br><br> Thomas Martin Bell, *Appellee-Respondent.* | September 14, 2016 <br><br> Court of Appeals Case No. 71A04-1511-DR-2005 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Jenny Pitts Manier, Judge <br><br> Trial Court Cause No. 71D05-1002-DR-94 |

**Robb, Judge.**

# Case Summary and Issue

[1] Meridian Health Services Corporation ("Meridian") appeals the trial court's order finding it in contempt of court for failure to comply with a subpoena duces tecum and appear at a deposition and awarding attorney's fees as a sanction pursuant to Indiana Trial Rules 26(C) and 37(A)(4). Concluding the trial court did not abuse its discretion in holding Meridian in contempt and ordering it to pay attorney's fees, we affirm.

# Facts and Procedural History

[2] In 2011, the trial court entered a decree dissolving the marriage of Thomas Bell ("Father") and Angela Bell ("Mother"). The decree incorporated the parties' agreement to share joint legal custody of their child, K.B., with Mother having primary physical custody. Father thereafter filed several motions to modify parenting time. Ultimately, Mother and Father agreed to an alternate parenting schedule, which the trial court approved on June 12, 2014. In the interim, Mother began taking K.B. to see a therapist at Meridian.

[3] In March 2015, Father's attorney contacted Meridian requesting K.B.'s therapy records in reference to an ongoing domestic relations matter. Meridian did not release K.B.'s records at that time, indicating Father would need to submit a signed medical release form. Prior to receiving Father's release form, Meridian sought and received from K.B.'s physician a letter stating it was "medically necessary that the records of [K.B.'s] therapy sessions *not* be released to her

parents." Corrected Appellant's Appendix at 33 (emphasis in original). The letter dated April 2 explained,

> Much of [K.B.]'s anxiety is related to stress within the family. Because [K.B.] needs to be able to openly talk with her therapist, she needs to be assured that her words cannot be used against her . . . . It is medically very important that [K.B.] continue in counseling and that she be confident in the safety of her relationship with her therapist. Any release of these records to [her] parent[s] could jeopardize her care and her mental and physical health.

*Id.*

[4] Meridian received Father's release form on May 14. Rather than release K.B.'s records, Meridian responded on May 15 with a letter from its counsel noting it had received a letter from K.B.'s physician stating "it is not in the best interests of [K.B.] to have her records released to her parents." *Id.* at 31. Meridian indicated it would therefore release the records only upon the issuance of a court order pursuant to the procedures set forth in Indiana Code chapter 16-39-3:

> I am sure that you are aware of the strict provisions within both state and federal law for the disclosure of a patient's mental health records especially in situations where the patient has not consented. In addition, Indiana law also provides for situations where the patient should not even be permitted disclosure of their own mental health records when it . . . would be detrimental to the physical and mental health of the patient. *See* Ind. Code § 16-39-2-4. As such, we believe this physician letter properly invokes the language within [section] 16-39-2-4 and would restrict access to the patient based upon the advice and concerns of the patient's

physician that disclosure would be detrimental to the physical or mental health of the patient. Since the Indiana Code does not provide any independent right to the parents of minor children to access their [children's] mental health records other than the ability to "exercise the patient's rights on the patient's behalf" under Indiana Code Section 16-39-2-9, we believe the restrictions in Section 16-39-2-4 concerning disclosure when it would be detrimental to the physical and mental health of the patient apply to a parent's request on behalf of the minor patient . . . . As such, it is my opinion that these records should not be released to the parents pursuant to any executed Medical Release or Authorization for Disclosures, but will be released only upon the issuance of a court order pursuant to the procedures set forth under Indiana Code [chapter 16-39-3] for disclosure without consent of the patient.

*Id.* at 31-32. Around the same time, Mother filed a petition to suspend Father's parenting time, alleging Father emotionally abuses K.B. The trial court modified Father's parenting time to telephone contact only pending an evidentiary hearing set for July 21, 2015.

[5] In preparation for that hearing, Father served a notice of deposition on K.B.'s therapist, a subpoena duces tecum for K.B.'s therapist to produce her "complete file in regards to [K.B.]" at the deposition, and a declaration of Father's compliance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *Id.* at 27-30. Meridian received the notice on July 9; the deposition was scheduled for July 16. On July 13, Meridian filed a motion to quash and motion for protective order, arguing state and federal law prohibited Meridian from disclosing the information to Father without a court order. The court took no action on the motion to quash prior to the scheduled deposition.

After K.B.'s therapist failed to appear for her deposition on July 16, Father filed a motion for rule to show cause why K.B.'s therapist should not be held in contempt, and the trial court scheduled a hearing on both parties' motions.

[6] K.B.'s physician and her therapist both testified at the hearing held on September 8. K.B.'s physician examined K.B. on two or three occasions prior to being contacted by Meridian and writing the letter in April 2015, although she could not say exactly when. As for the letter itself,

> Q [W]hat was the reason for writing this letter?

> A I had been contacted by Meridian that they—that [K.B.'s] records were being requested. And it is our position that the – what is said in a therapy session or in a doctor's session is not releasable . . . .

> The Court: When you say "our position" do you—can you clarify what "our" means?

> [Physician:] [I]t's the standard position of pediatricians.

> * * *

> Q [W]hat was the reasoning behind writing this letter?

> A [T]here is stress between the parents. And whenever we see stress and conflict between the parents, anything that puts the child or the child's words between the parents is detrimental to the child. So the fact that there is conflict between the parents would mean that the child's words should be protected so that the child is not put in between

in the conflict of those parents.

* * *

Q    Did you feel like this child would not be able to continue
     in therapy if she was required to have these records
     released?

A    Therapy would at least—continued therapy—therapy
     would at least be put in jeopardy.

* * *

Q    And did you reflect that it was in your medical
     professional opinion very important that this child
     continue in counseling?

A    Yes.

Transcript at 40, 44-45. Although K.B.'s physician mentioned protective orders issued against Father as an additional concern, she admitted she lacked personal knowledge of any such orders:

[Meridian's Attorney]    [D]o you know of anything outside of
          your HIPAA restrictions that would make you believe that
          the stressors in this situation were greater than any normal
          situation?

A    Yes. . . . The fact that we are aware of restraining orders
     having been taken out.

The Court:   Who's "we?"

A    Our office.

* * *

Q      What is your understanding of the restraining orders that you're aware of?

A      That there are restraining orders against the father with various agencies in the County.

Q      Does your agency have such a restraining order?

A      [M]y office does not.

Q      Do you know what the basis of those are, based on your knowledge?

A      No.

* * *

[Father's attorney]      So it's your recollection that some agency somewhere told you something about a restraining order, of which you know nothing about the facts, exists against [Father]; correct?

A      Correct.

*Id.* at 49-50, 52. K.B.'s physician further testified she contacted Child Protective Services ("CPS") in reference to K.B.:

[Father's attorney]      About what?

[Meridian's attorney]      I would object in regards to her

| | |
|---|---|
| [Physician] | I cannot say what [K.B.] said. |
| The Court | Stop.  When was the contact made, approximately? |
| [Physician] | To the best of my recollection there were two contacts and they were both before April. |
| The Court | Okay.  And were they a result of something the child said or something the child's mother said, or do you remember? |
| [Physician] | Something that the child said. |
| The Court | Okay.  Was she alone with you when this was said? |
| [Physician] | Yes. |
| The Court | Okay.  Do you know if anything has transpired as a result of those contacts? |
| [Physician] | I know that there was an investigation, and I know that the child was interviewed by a forensic psychiatrist. |

*Id.* at 56-57.

[7]   K.B.'s therapist echoed her physician's concerns:

Q      Is there any reason why—without revealing any confidential mental health records—why you feel like this case is stronger than others for non-release?

A       Yes. I feel like she wouldn't open up to me. She wouldn't feel the safety of therapy that needs to be there. To open up and talk about issues.

Q       Is that a standard concern across the board with children of this age?

A       No.

Q       Is there any reason outside of your relationship . . . that would make you more concerned in this case than others?

A       As—as [K.B.'s physician] said, just the conflict level between the parents.

*Id.* at 62. K.B.'s therapist also mentioned "[b]eing screamed at on the phone several times" by Father and "ending the phone call because of that." *Id.* at 63.

[8]     On September 15, the trial court denied Meridian's motion to quash and motion for protective order, concluding the provisions of the Indiana Code which permit a provider to withhold a patient's records if the information would be detrimental to the patient's health do not apply to the release of records to third parties.[1] The statute addresses a provider's ability to withhold the release of records "to the patient him or herself," the trial court explained. App. at 12. Moreover, since Father shares legal custody of K.B. with Mother

---

[1] The trial court cited Indiana Code section 16-39-1-5 in its order. Indiana Code chapter 16-39-1 "applies to all health records *except* mental health records . . . ." Ind. Code § 16-39-1-1(a) (emphasis added). Section 16-39-1-5 and section 16-39-2-4 both provide for withholding requested information from the patient under certain conditions, but Indiana Code section 16-39-2-4, specific to mental health records, is the appropriate citation in this case and is the section relied upon by the parties.

and there was no court order limiting Father's access to K.B.'s records, the trial court concluded Indiana Code section 16-39-2-9 unequivocally required the release of K.B.'s records to Father. The trial court ultimately concluded Father is not required to submit to the procedures outlined in Indiana Code chapter 16-39-3 to acquire the records but "strongly admonished [both Father and Mother] that neither is to convey to the child, directly or indirectly, that he or she has had access to the child's records . . . ." *Id.* at 15. The trial court's order noted that "[a]lthough [K.B.'s therapist] may determine she cannot testify at a deposition, she should appear, make that record and return [sic] over the subpoenaed records." *Id.*

[9] On September 25, Meridian filed a motion to correct error, arguing the trial court's interpretation of Indiana Code chapter 16-39-2 creates a less restrictive standard for access to protected health information than the standard imposed by HIPAA at the federal level. Stated differently, Meridian argued the trial court's interpretation of state law would improperly conflict with the federal law. *See* 45 C.F.R. § 160.203(b) (stating HIPAA preempts state law unless "[t]he provision of State law relates to the privacy of individually identifiable health information and is more stringent").

[10] On September 29, Father served a second deposition notice and subpoena duces tecum on K.B.'s therapist to appear on October 2. Father also filed a petition for attorney's fees pursuant to Indiana Trial Rules 26(C) and 37(A)(4). The following day, Meridian filed a motion to stay the proceedings pending the court's ruling on Meridian's motion to correct error. Meridian also requested

an emergency hearing on its pending motions, but the court was unavailable for a hearing prior to the scheduled deposition. Therefore, on October 2, Meridian tendered K.B.'s records directly to the trial court, along with a motion to seal the records under Indiana Administrative Rule 9(G)(2). Meridian stated it "does not desire to violate the Court's order . . . but continues to believe that disclosure could jeopardize the well-being of the child, is not in her best interests, and should not be required under both state and federal law." App. at 88. The motion to seal requested "the Court not disclose [K.B.'s] records to the parties or their counsel herein until resolution of all pending Motions filed by [Meridian] as well as any potential appellate action which may be taken by any of the parties . . . ." App. at 89.[2]

[11] The trial court held a hearing on October 6 after which it issued a letter to the parties' attorneys stating the trial court had reviewed K.B.'s records and would make the records available for in camera review:

> You may take notes but you will not be permitted to make any copies of these records and I am [directing that] you not share any information with your respective clients as to what you have discerned from your review of the health records. Rather, I would like the two of you to meet with one another after you have completed your review to discuss whether you can reach agreement as to how to re-institute, or not, parenting time for

---

[2] Although not entirely clear from the record, it appears K.B.'s therapist did not attend the deposition scheduled for October 2 because another deposition was scheduled for a later date at which the therapist appeared and entered an objection to answering any questions with regard to communication with K.B. *See* Tr. at 109.

[Father]. I would like you to have completed your review and
your discussions by October 23, 2015.

*Id.* at 94. Father's attorney on the same day filed a verified affidavit for
attorney's fees, which included as an exhibit an itemized list of the fees Father
incurred with respect to obtaining K.B.'s records from Meridian, totaling nearly
$5,900 at that time.

On October 12, Meridian filed a petition to certify for interlocutory appeal the
trial court's order denying Meridian's motion to quash and motion for
protective order. The petition asserted essentially the same argument as
Meridian's pending motion to correct error. The trial court declined to certify
the order and issued a new order permitting the parties to copy the records
tendered to the court. Thereafter, Father filed a motion for issuance of orders
on pending motions and petitions, including Father's petition for attorney's
fees. At a hearing on the pending motions, the trial court noted with respect to
its initial determination that Meridian was required to disclose the records:

> [M]y sense of the evidentiary hearing was that the danger was no
> different than any person in—any child. You know, this is the
> environment we live in. Any child of divorce who's in therapy is
> in no different situation than this child. I didn't see anything
> particularly . . . no one came forth with any level of detail specific
> to this child that had the nature of the gravity that's being
> asserted.

Tr. at 118. The trial court granted Father's petition for attorney's fees,
reasoning:

[Meridian's] agent failed to appear for a deposition of which she had been notified and with respect to which she had been served a subpoena duces tecum, directing her to bring with her certain health care records of the parties' child. [Meridian] did file a Motion to Quash and for Order of Protection two (2) days prior to the scheduled deposition, but that Motion was not ruled upon by the Court at the time of the scheduled deposition.

Subsequently, [Meridian] argued that the release of the child's medical records was governed by I.C. 16-39-1 and -2, that no consent had been given for the release of the records, that the child's health care provider had determined that the release of the records would be detrimental to the child's health, and that further proceedings under I.C. 16-39-3 were required. The Court conducted such further proceedings. No substantial evidence was presented to support the claim that the release of the records to Father would be detrimental to the child. Moreover, the Court determined that Father should not have been required to invoke the procedures set forth at I.C. 16-39-3. Significant legal expenses were incurred needlessly by Father.

* * *

[Meridian] is determined to be in contempt of Court for failure to comply with the subpoena duces tecum and failure to appear at the deposition.

App. at 18-19. Meridian was ordered to pay to Father's counsel $6,270 in attorney's fees. This appeal followed.[3]

---

[3] It appears the trial court never explicitly ruled on Meridian's motion to correct error. It was therefore deemed denied pursuant to Trial Rule 53.3(A).

# Discussion and Decision

## I. Standard of Review

[13] Meridian contends the trial court erred in awarding attorney's fees to Father pursuant to Indiana Trial Rules 26(C) and 37(A). Trial Rule 26(C) allows a court, upon a party's motion, to take measures to limit discovery when required to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." The provisions of Trial Rule 37(A)(4) apply to the award of expenses incurred in relation to a motion for protective order. Ind. Trial Rule 26(C). Pursuant to Trial Rule 37(A)(4), a presumption arises that the trial court will also order reimbursement of the prevailing party's reasonable expenses, including attorney's fees, subject only to a showing that the losing party's conduct was "substantially justified." A person is "substantially justified" in resisting discovery, for purposes of avoiding the sanctions provided by Trial Rule 37, "if reasonable persons could conclude that a genuine issue existed as to whether a person was bound to comply with the requested discovery." *Penn Cent. Corp. v. Buchanan*, 712 N.E.2d 508, 513 (Ind. Ct. App. 1999), *trans. denied*.

[14] A trial court's rulings on discovery violations and attendant sanctions are given a strong presumption of correctness because they are usually fact-sensitive. *Gonzalez v. Evans*, 15 N.E.3d 628, 633 (Ind. Ct. App. 2014), *trans. denied.* We will reverse only upon a showing that the trial court abused its discretion. *Huber v. Montgomery Cnty. Sheriff*, 940 N.E.2d 1182, 1185-86 (Ind. Ct. App.

2010).  An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law.  *M.S. ex rel. Newman v. K.R.*, 871 N.E.2d 303, 311 (Ind. Ct. App. 2007), *trans. denied*.

## II.  Attorney's Fees for Motion to Quash

[15]    The trial court's order awarding attorney's fees to Father was the result of the trial court's original decision denying Meridian's motion to quash and motion for protective order, making Father the prevailing party entitled to an award of expenses incurred in opposing the motion.  Although Meridian appeals the attorney's fee order, the crux of Meridian's argument is that the trial court's original order denying the motion to quash was an abuse of discretion because Meridian was substantially justified in challenging the discovery request based on federal and state statutes relating to mental health records.  Therefore, in order to determine whether the trial court's award of attorney's fees as a sanction for failing to comply with discovery was appropriate, we must first determine whether Meridian's challenge to the request was substantially justified.

# A. HIPAA Privacy Rule[4]

"HIPAA protects individuals from unwarranted dissemination of medical and mental health records by restricting access to such records without the individual's direct consent." *E.J. ex rel. Jeffrey v. Okolocha*, 972 N.E.2d 941, 945 (Ind. Ct. App. 2012). In general, a covered entity may not use or disclose protected health information, except as specifically permitted. 45 C.F.R. § 164.502(a); *see also E.J. ex rel. Jeffrey*, 972 N.E.2d at 945 ("In general, HIPAA requires that 'covered entities' . . . obtain patient authorization before disclosing protected health information."). A health care provider is specifically permitted to disclose protected health information to "the individual" receiving health care, 45 C.F.R. § 164.502(a)(1)(i), or to a "personal representative" of the individual, 45 C.F.R. § 164.502(g)(1). A "personal representative" includes a parent who has authority under applicable law to act on behalf of an unemancipated minor in making decisions related to health care. 45 C.F.R. § 164.502(g)(3)(i).[5] The health care provider may therefore disclose protected health information to the parent of an unemancipated minor in most

---

[4] Father contends Meridian waived any argument pertaining to HIPAA because Meridian first raised HIPAA in its motion to correct error. Although we agree a party may not raise an issue for the first time in a motion to correct error, *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000), we conclude Meridian sufficiently raised the issue prior to its motion to correct error, *see, e.g.*, App. at 31 (letter dated May 15 stating Meridian will move to quash any subpoena that does not comply with the provisions set forth in Indiana Code chapter 16-39-3 because "both federal and state law have strict disclosure restrictions"); *id.* at 25 (motion to quash stating "Indiana Code Section 16-39-2-3 and Federal law prohibit Non-Party from disclosing to [Father] the information requested within the Notice of Deposition and the Subpoena Duces Tecum").

[5] There are three exceptions to this general rule in which the parent will not be recognized as the personal representative and the minor will be treated as the individual for purposes of access to protected health information. 45 C.F.R. § 164.502(g)(3)(i)(A)-(C). None of those exceptions apply here.

circumstances. *Id.* Regardless of whether the parent is otherwise considered a personal representative, HIPAA defers to state law with respect to the ability of the parent to obtain health information about the minor child: the health care provider may disclose to a parent the minor's protected health information to the extent it is permitted or required by state law; conversely, the health care provider may not disclose the information when and to the extent state law prohibits such disclosure. 45 C.F.R. § 164.502(g)(3)(ii)(A), (B).

## B. Indiana Law

[17] Indiana law regarding the mental health information of minors begins with the premise that records can be disclosed with the consent of the patient, Ind. Code § 16-39-2-3, and a parent is entitled to exercise the minor patient's rights on the patient's behalf, Ind. Code § 16-39-2-9(a)(1);[6] therefore, a parent may consent to disclosure on behalf of his or her child. Moreover, a custodial parent and a non-custodial parent have equal access to a child's mental health records. Ind. Code § 16-39-2-9(b); *see also* Ind. Parenting Time Guidelines § I(D)(4) ("Under Indiana law, both parents are entitled to direct access to their child's . . . mental health records . . . ."). However, if there exists a court order that limits the noncustodial parent's access and the health care provider has received a copy of the order or has actual knowledge of the order, then the provider must abide by the terms of the court order. Ind. Code § 16-39-2-9(b). At the outset then, state

---

[6] There are comparable provisions for non-mental health medical records in Indiana Code chapter 16-39-1.

law required Meridian to disclose K.B.'s mental health information to both Father and Mother *unless* there was a court order limiting Father's access. There was no such order in place at the time Father made his request for access to the records.

[18] Not only was there no such order limiting Father's access at that time, no such order has been requested since, by either Mother or Meridian. Rather than seeking a court order limiting Father's access, Meridian restricted Father's access on its own initiative and has asserted throughout this litigation that because K.B.'s therapist and physician determined that the requested information would be detrimental to K.B., Father was required to seek a court order *granting* him access. Indiana Code section 16-39-2-4 provides:

> A patient is entitled to inspect and copy the patient's own mental health record. However, if the provider that is responsible for the patient's mental health records determines for good medical cause, upon the advice of a physician, that the information requested under this section is detrimental to the physical or mental health of the patient, or is likely to cause the patient to harm the patient or another person, the provider may withhold the information *from the patient*.

(Emphasis added.) As the trial court found, this provision is directed to the potential for harm caused by the patient inspecting his or her own records. *See* App. at 12. In fact, Meridian seemed to acknowledge as much in its May 15 letter declining to provide the records to Father after receiving his signed consent when it cited section 16-39-2-4 and stated, "[W]e believe this physician letter properly invokes the language within this Section 16-39-2-4 and would

restrict access *to the patient* . . . ." *Id.* at 31 (emphasis added). But Meridian also asserted that the only right parents have is to exercise the minor child's rights on the child's behalf and if the provider may withhold the records from the child pursuant to section 16-39-2-4, it may withhold the records from the parents, as well. Accordingly, Meridian declared it would be withholding the records from Father and Father's only recourse was to seek a court order pursuant to Indiana Code chapter 16-39-3 when disclosure is sought absent patient consent.[7]

[19] We understand Meridian's concern over allowing a third party access to records that may be withheld from the patient. But by its plain language, section 16-39-2-4 restricts only the patient's access to his or her own records. *Compare* Ind. Code § 16-39-2-4 *with* Cal. Health & Safety Code § 123115(a)(2) ("The representative of a minor shall not be entitled to inspect or obtain copies of the minor's patient records . . . [w]here the health care provider determines that access to the patient records requested by the representative would have a detrimental effect on the provider's professional relationship with the minor patient or the minor's physical safety or psychological well-being."); N.Y.

---

[7] Meridian's position is somewhat internally inconsistent. Section 16-39-2-4 states that "[i]f the provider is a state institution or agency, the patient may appeal the provider's refusal to permit the patient to inspect and copy the patient's own record under IC 4-21.5." There is no corresponding provision regarding appeal when the provider is *not* a state institution or agency. It therefore appears that if K.B. were an adult being treated by Meridian and Meridian made the determination that release of the records to her would be detrimental, she would have no recourse. If, as Meridian asserts, Father's only rights to K.B.'s records stem from K.B.'s own rights, then Father would likewise have no recourse, including through the provisions of chapter 16-39-3, to which Meridian directed him.

Mental Hygiene Law § 33.16(b)(3) (stating a facility must provide an opportunity for a parent to inspect records concerning the care and treatment of a minor upon request, "provided, however, that such parent . . . shall not be entitled to inspect or make copies of any clinical record concerning the care and treatment of an infant where the treating practitioner determines that access to the information requested by such parent . . . would have a detrimental effect on the practitioner's professional relationship with the infant, or on the care and treatment of the infant or on the infant's relationship with his or her parents"). We agree with the trial court that under Indiana law, Father was entitled to direct access to K.B.'s records and was not required to seek a court order to obtain them.

## C. Restrictions on Access

[20] Notwithstanding the provisions of Indiana law that would allow Father access to K.B.'s mental health records without a court order, HIPAA places an additional restriction on access by a personal representative that applies "[n]otwithstanding a State law . . . to the contrary":

> [A] covered entity may elect not to treat a person as the personal representative of an individual if:
>
> (i) The covered entity has a reasonable belief that:
>
>> (A) The individual has been or may be subjected to domestic violence, abuse, or neglect by such person; or

> (B) Treating such person as the personal representative could endanger the individual; and

> (ii) The covered entity, in the exercise of professional judgment, decides that it is not in the best interest of the individual to treat the person as the individual's personal representative.

45 C.F.R. § 164.502(g)(5).[8]

[21] Although a covered entity may decline to treat a person as a personal representative if it believes doing so could endanger the individual, the covered entity's belief to that effect must be "reasonable." 45 C.F.R. § 164.502(g)(5)(i). When Father sought disclosure of K.B.'s records, Meridian requested and received a letter from K.B.'s physician stating that release of the records could "jeopardize [K.B.'s] care and her mental and physical health." App. at 33. Meridian contends it reasonably believed, based on the physician's letter, disclosure of K.B.'s records to her parents could endanger K.B. and on that basis, declined to release the records to Father. Making the initial determination that records should not be disclosed pursuant to this HIPAA provision is certainly Meridian's right and obligation as a mental health provider in service of its client. Once the dispute was placed before the trial

---

[8] If a provision of HIPAA and a provision of state law conflict, the HIPAA provision overrides or preempts state law, with certain exceptions. 45 C.F.R. § 160.203. The state law provision will control if it "relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification" of the federal law. 45 C.F.R. § 160.203(b). Even without the "notwithstanding any contrary state law" language, if 45 C.F.R. § 164.502(g)(5) applies in this situation, it would preempt section 16-39-2-4 because the state law, allowing parental access to the records, is less stringent than the federal law in this circumstance.

court, however, the matter of disclosure became a judicial determination rather than a therapeutic judgment. *See* 45 C.F.R. § 164.512(e)(1) (permitting disclosure of protected health information in response to a court order).

[22] At the hearing on Meridian's motion to quash and motion for protective order, the physician could not recall when, prior to writing the letter advising against disclosure, she had last seen K.B. In addition, the physician testified that it was the "standard position of pediatricians" that "*whenever* we see stress and conflict between parents, *anything* that puts the child or child's words between the parents is detrimental to the child." Tr. at 40, 44 (emphasis added). The only testimony from K.B.'s physician that was specific to this situation was that she had heard some county agencies had protective orders against Father and she had contacted CPS on K.B.'s behalf. However, she knew no particulars about the protective orders and she was unable to provide any detail about what K.B. said that caused her to contact CPS. K.B. was apparently interviewed by CPS but there was no evidence regarding an ensuing CPS investigation. K.B.'s therapist testified that releasing the records might cause K.B. not to "feel the safety of therapy that needs to be there." Tr. at 62. The therapist further testified that she had a greater concern for K.B. than other children of her age because of the conflict between her parents, but there was no testimony regarding why the conflict between *these* parents was of more concern than the conflict that undoubtedly exists between many divorced parents.

[23] The trial court heard this testimony from K.B.'s physician and therapist and ultimately concluded, "No substantial evidence was presented to support the

claim that the release of the records to Father would be detrimental to the child." App. at 19. The trial court also noted with respect to this issue,

> [T]he pediatrician could provide no specifics other than the obvious, but important, observation that if a child is suffering due to the conflict between her parents, placing her in a position where she feels that one parent can use her communications to align her with or against a parent is the potential source of even greater suffering. But that would seem to ignore that as a consequence of the current arrangement in this case, which involves Mother taking the child to the pediatrician and therapist and participating in some sessions with the pediatrician (and perhaps the therapist)[,] the child is likely to see Mother as aligned with her and Father not.

*Id.* at 14. Although it was the provider's decision to withhold the records from Father on the basis of "parental conflict," we must note, as the trial court did, that Mother "raised no objection to the subpoena and has stood silent through subsequent proceedings" regarding release of the records. *Id.* at 19. And we further note that this dispute arose in the larger context of a dissolution which had been before the trial court for several years. The trial court was no stranger to the family dynamics.

[24] We commend the trial court for its careful consideration of the evidence. K.B.'s physician testified to some concern over protective orders against Father (none of which were protecting K.B.) and to having made a referral to CPS for K.B. (which came to nothing). She also testified that the "standard position" of pediatricians was that therapy records should not be released to parents experiencing "conflict." Tr. at 40, 44. K.B.'s physician maintained, "[T]he fact

that there is conflict between the parents would mean that the child's words should be protected so that the child is not put in between in the conflict of those parents." *Id.* At best, the physician's testimony was inconsistent and did not clearly indicate whether her advice not to release the records stemmed from her standard practice in all divorce/custody cases or from "good medical cause" relative to K.B. *See* Ind. Code § 16-39-2-4. This inconsistency was a matter for the trial court to resolve. K.B.'s therapist also relied in large part on the generic "conflict" between the parents to support Meridian's position and did not meaningfully distinguish this situation from any other custody dispute. The trial court concluded a generalized concern for children whose parents experience "conflict" was insufficient to demonstrate a reasonable belief that K.B. may be endangered and we cannot say that such a conclusion is erroneous on this record.

[25] Despite the lack of particularized concerns, the trial court took great care to protect K.B. from knowing her records had been disclosed. In its order denying Meridian's motion to quash and motion for protective order, the trial court "strongly admonished" the parents not to let K.B. know in any way they had access to her records and further admonished them "to comport themselves verbally and otherwise in a manner that does not betray their knowledge of [her] interactions with her care providers." App. at 15. After the records were not disclosed as ordered but were instead tendered to the trial court, the trial court allowed the attorneys to review them in camera, but directed them to not share any information from those records with their respective clients.

[26] This brings us back to the actual order at issue in this appeal: the sanctions for Meridian's contempt in failing to turn over the records after the trial court ordered them to be disclosed. We emphasize that the issue in this case is not Meridian's initial therapeutic judgment that it should not release K.B.'s records; nor is the issue the trial court's judicial determination that the records should be released over Meridian's objection. The issue of a sanction arises because the trial court heard the dispute and made a definitive ruling that Meridian did not honor. Although we have held herein that Meridian did not have the right to withhold the records from Father under Indiana law, and the trial court found in its judgment that Meridian had not proved the requirements for withholding the records under federal law, we cannot fault Meridian for taking steps it thought necessary to preserve patient confidentiality and serve its patient's best interest, especially considering K.B. is unable to advocate for herself, and we note the trial court did not sanction Meridian for objecting to release of the records in the first instance, either. State and federal law in this area is complex and very few cases have interpreted the relevant statutes to offer guidance; in addition, once the records have been released, they cannot be protected—so it was important for Meridian to exercise its therapeutic judgment until a court could hear and decide the matter. Had Meridian made its challenge to disclosure and then complied with the ensuing trial court decision, we might have been inclined to say a genuine issue existed as to whether it was bound to comply with Father's request and Meridian was therefore substantially justified in initially resisting disclosure despite the ultimate determination against its position.

However, the trial court ordered sanctions only after it held a hearing at which Meridian offered evidence in support of withholding the records from Father (evidence, incidentally, which Father could not meaningfully controvert because he did not have access to the records), it ruled against Meridian's motion to quash and motion for protective order, and yet Meridian continued to balk at releasing the records. Meridian filed a barrage of motions and defied the trial court's order that K.B.'s therapist appear at any scheduled deposition, make a record of her inability to testify, and turn over the subpoenaed records, instead tendering the records directly to the trial court under seal on the date of a scheduled deposition. After its initial insistence that Father seek a court order allowing disclosure of the records, Meridian's ongoing defiance of the trial court's order regarding this dispute was not substantially justified, and it likely interfered with the court's management of the underlying dispute. The trial court did not abuse its discretion in finding Meridian in contempt for failing to provide the records to Father and ordering Meridian to pay the attorney's fees Father incurred as a result of defending against a failed request for a protective order.

# Conclusion

Because HIPAA permitted and state law clearly required Meridian to release K.B.'s records to Father, the trial court did not abuse its discretion in ordering Meridian pay Father's attorney's fees. We therefore affirm.

Affirmed.

Najam, J., and Crone, J., concur.